**SIGNED THIS: April 21, 2011**

                                             _____
                                                        **MARY P. GORMAN**
                                              **UNITED STATES BANKRUPTCY JUDGE**
_____

```
                  UNITED STATES BANKRUPTCY COURT

                    CENTRAL DISTRICT OF ILLINOIS

In Re                            )
                                 )    In Bankruptcy
BARRY DON HICKMAN and            )
NANCY CHRISTINA HICKMAN,         )    Case No. 10-73696
                                 )
         Debtors.                )
```

## O P I N I O N

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 mandates the independent auditing of certain individual cases, and provides for the revocation of a discharge when a debtor fails to cooperate with an audit. The Debtors here filed a Chapter 7 case in 2008 which was selected for audit. The Debtors' discharge in the 2008 case was issued, but then subsequently revoked due to their failure to provide documents and information required for the audit. Illinois National Bank ("INB") was a scheduled creditor of

-1-

the Debtors in their prior case and has also been scheduled as a creditor in this case. Before the Court is INB's Motion for Order Lifting Automatic Stay. INB seeks relief from the automatic stay because, it asserts, the revocation of the Debtors' discharge in their prior case constitutes a bar to the discharge in this case of all debts scheduled in the 2008 case. For the reasons stated herein, the Court finds that the revocation of Debtors' discharge in their 2008 case is not a bar to the discharge of their debt to INB in this case. Accordingly, the Motion will be denied.

### I. Factual and Procedural History

On September 4, 2008, Barry Don Hickman and Nancy Christina Hickman ("Debtors") filed a Chapter 7 petition as Case #08-72167. INB was listed as a creditor on Debtors' Schedule D - Creditors Holding Secured Claims. Although there is nothing in the docket to reflect it, the case was selected for audit, but otherwise proceeded in a fairly straightforward manner. On November 13, 2008, however, the following docket entry was made:

> Report of Audit (Unable to Complete). Pursuant to 28 U.S.C. 586(f)(1), the United States Trustee contracted for an audit to be performed of this case. The audit was not completed because the debtor did not respond to the auditors (sic) requests for information.[1]

---

[1] The auditing of cases was instituted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8 (2005) ("BAPCPA"). Section 603(a) of BAPCPA provides that Chapter 7 and Chapter 13 cases in which the debtor is an individual

Debtors' discharge was initially issued on December 30, 2008. But, on February 19, 2009, the United States Trustee ("UST") filed an adversary complaint seeking to revoke the Debtors' discharge due to the Debtors' failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and other papers that were requested for the audit. *See* 11 U.S.C. §727(d)(4)(B); 28 U.S.C. §586(f).  On May 6, 2009, the Court entered a Consent Order approved by Debtors' counsel and counsel for the UST, the terms of which required, *inter alia*, that the Debtors produce to the UST certain information and documents within 30 days of the entry of the Consent Order and that the Debtors provide a certification to the Court and to the UST that all required information and documents have been produced.  The Consent Order further provided that Debtors' failure to comply with the terms of the Consent Order would result in the revocation of Debtors' discharge without further notice.  On June 18, 2009, counsel for the UST filed a Motion for Entry of Order Revoking Debtors' Discharge which stated that the Debtors had failed to

---

may be audited to determine the accuracy, veracity, and completeness of petitions, schedules, and other information which a debtor is required to provide.  Audits are to be performed by public accountants in accordance with generally accepted auditing standards.  Audits are to be performed in any case in which the schedules of income and expenses reflect greater than average variances from the statistical norm of the district because of higher income or higher expenses than the statistical norm. Random audits are also to be performed in not less than one out of every 250 cases.

provide the UST with all of the documents described in the Consent Order and had failed to provide a certification to the Court and to the UST that all of the information and documents had been provided.  Because, in fact, no certification had been filed as required by the Consent Order, this Court entered an Order revoking the Debtors' discharge.

Debtors filed a Motion to Vacate the Order revoking their discharge, the UST filed an Objection, and a hearing on the Motion and Objection was held on July 14, 2009.  At the hearing, Debtors' counsel admitted that, although much of what the Debtors had agreed to produce had been produced, Debtors were not, even then, in full compliance with the Consent Order.  The Motion to Vacate was denied by an Order entered on the same date.  The case remained open for approximately another year for the administration of assets and was finally closed on June 30, 2010.

Debtors filed their pending voluntary Chapter 7 petition on December 10, 2010.  Debtors listed INB on their Schedule F - Creditors Holding Unsecured Nonpriority Claims.  INB's claim is listed as a business loan incurred in 2003 in the amount of $163,000.  INB subsequently filed its Motion for Order Lifting Automatic Stay.  INB contends that, pursuant to §523(a)(10), the Debtors are not entitled to discharge their debt to it in this case because their discharge was revoked in their previous case.  *See* 11 U.S.C. §523(a)(10).  Consequently, INB asserts, the Debtors should

not have the benefit of the automatic stay in this case because their debt to INB will not be discharged. Debtors deny that the revocation of their discharge in the prior case affects their ability to discharge debts in this case and assert that, by its plain language, §523(a)(10) applies only when a debtor's discharge was waived or denied, but not when the discharge was revoked, as occurred in their 2008 case. Debtors further argue that, even if §523(a)(10) applies in some cases where a discharge has been revoked rather than denied or waived, the provision does not apply here because their previous discharge was revoked pursuant to the specific provision of the statute relating to noncompliance with a statutorily-mandated audit. *See* 11 U.S.C. §727(d)(4)(B); 28 U.S.C. §586(f). Debtors contend that §523(a)(10) is limited by its own terms and, because those terms were not amended to include §727(d)(4)(B) when the audit provisions were added to the Code in 2005, §523(a)(10) cannot apply here.

The parties have argued and fully briefed the issues which are now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Resolving issues regarding the termination, annulment, or modification of the automatic stay and determinations as to the dischargeability of particular debts are core

proceedings.  *See* 28 U.S.C. §157(b)(2)(G)&(I).

### III. Legal Analysis

INB relies on §523(a)(10) as authority for the relief it seeks.  Section 523(a)(10) excepts from discharge any debt

> that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act[.]

11 U.S.C. §523(a)(10).

On its face, §523(a)(10) contains specific language which would appear to limit its applicability here.  As the Debtors point out, the provision says that it applies when a discharge was waived or denied, but makes no mention of applicability when, as here, a discharge was revoked.  Further, the provision says it applies only when the loss of discharge occurred pursuant to one of the several enumerated subsections of §727(a).  *See* 11 U.S.C. §523(a)(10), §727(a)(2),(3),(4),(5),(6),&(7).  Here, the Debtors' loss of their discharge occurred pursuant to a subsection of §727(d), not §727(a).  *See* 11 U.S.C. §727(d)(4)(B).

When courts interpret a statute, they look first to its language. *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004).  If that language is plain, the court's only function is to enforce it according to its terms unless doing so would lead

-6-

to absurd results.  *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).  Further, where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'."  *Id.*, *quoting Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).  In determining whether statutory language is clear, it must be read not in isolation but as part of the statutory scheme of which it is a part.  *Matter of McFarland*, 84 F.3d 943, 946-47 (7th Cir. 1996).  A statute should not be construed in a way that makes part of the statute meaningless, if that result can be avoided.  *In re Whitaker Construction Co., Inc.*, 411 F.3d 197, 205 (5th Cir. 2005).

   INB argues that, in spite of its precise terminology and the applicable rules of statutory construction cited above, §523(a)(10) applies in instances where a discharge has been revoked rather than waived or denied.  INB acknowledges that the Debtors' discharge was revoked and not denied or waived, but suggests that is a distinction without a difference.  Interestingly, there is some case law support for INB's position.  See, e.g., *In re Klapp*, 706 F.2d 998, 1000 (9th Cir. 1983)(revocation of discharge based on fraud has the same effect as denial of discharge for fraud when determining dischargeability in a subsequent case); *In re Mendoza*, 16 B.R. 990, 996 (Bankr. S.D. Cal. 1982) (revocation of discharge for refusal to comply with court order is the equivalent of a

denial of discharge for refusal to comply with a court order); but see *In re Faber*, 330 B.R. 235, 240 (Bankr. N.D. Ind. 2005) (revocation of discharge under §727(d)(3) for failure to comply with a court order does not constitute a denial of discharge under §727(a)(6) for purposes of applying §523(a)(10) in a future case).

INB cites *In re Ventura*, 375 B.R. 103 (Bankr. E.D. N.Y. 2007) for the proposition that revocation of a discharge under §727(d)(4)(B) makes debts scheduled in the case ineligible for discharge in a future bankruptcy case. However, *Ventura* involves the dismissal of a case under §707(a) for noncompliance with an audit and not the revocation of a discharge under §727(d)(4)(B). *Ventura* does state that *Klapp* stands firmly for the proposition that the debts scheduled in a case where the discharge is revoked for failure to cooperate with an auditor are not subject to discharge in a subsequent case. *Ventura*, 375 B.R. *at* 110. However, *Klapp* was decided more than 20 years before BAPCPA became law and §727(d)(4)(B) was added to the Bankruptcy Code. *Klapp* simply has nothing to do with determining the consequences of a debtor's failure to cooperate with a statutorily-mandated audit or the effect of a revocation of discharge under §727(d)(4)(B). Rather, *Klapp* involved a revocation of discharge based on fraud, and the *Klapp* court made it clear that equating such a revocation with a denial of discharge was appropriate only because the fraudulent conduct of the debtor there could form the basis for

both denial and revocation. *Klapp,* 706 F.2d at 1000.

Case law is divided as to whether, under the limited circumstances where the grounds for the revocation of a discharge also constitute grounds for the denial of a discharge, the revocation may be considered as the equivalent of a denial for purposes of the future applicability of §523(a)(10). However, even the cases that support such a result provide no support for INB's position here. Debtors' discharge in their 2008 case was revoked pursuant to a subsection of §727(d) which has no counterpart in §727(a). Without such a counterpart, there is no hook to bring the revocation within the provisions of §523(a)(10).

Debtors' discharge was revoked pursuant to §727(d)(4)(B), which provides as follows:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if–
>
> (4) the debtor has failed to explain satisfactorily –
>
> * * *
>
> (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

11 U.S.C. §727(d)(4)(B).

Section 727(a) contains no express provision for the denial of

-9-

a discharge when a debtor fails or refuses to cooperate in a statutorily-mandated audit. Accordingly, even if this Court overlooks the distinction - or difference - between the terms "revocation" and "denial", §523(a)(10) cannot apply because it is limited on its face to losses of discharge pursuant to specific provisions of §727(a). None of those specific provisions have anything to do with the failure of a debtor to cooperate with a statutorily-mandated audit.

In an effort to overcome this stumbling block, INB asserts that Debtors' discharge was actually revoked pursuant to §727(d)(3) due to Debtors' refusal to obey an order, *to wit*: the Consent Order entered on May 6, 2009. *See* 11 U.S.C. §727(d)(3). Because a revocation of discharge for refusal to obey a court order pursuant to §727(d)(3) is actually based on the grounds for denial of a discharge set forth in §727(a)(6), and because §727(a)(6) is enumerated as one of the grounds for a finding of nondischargeability under §523(a)(10), INB argues that §523(a)(10) applies here.

To find in favor of INB on this argument would require a rewrite of the history of the Debtors' 2008 case. The UST's Complaint to revoke the Debtors' discharge was brought solely under the provisions of §727(d)(4)(B). The UST never sought and this Court never entered an order that compelled the Debtors to cooperate with the audit. This Court has never found - and has

never been asked to find - that the Debtors refused to obey any order of this Court.

When the Complaint was filed, the Debtors' attorney acknowledged primary responsibility for the Debtors' failure to provide the required information to the auditors.  The Debtors could have gone to trial on the Complaint with the hope that their attorney's admissions of fault would be sufficient to meet their burden to "explain satisfactorily" their failure to cooperate.  Instead, they settled with the UST and entered into the Consent Order.  In doing so, they accepted a 30-day extension to provide the requested information and gave up their right to defend based on the failures of their attorney.  Likewise, the UST gave up the opportunity to pursue a revocation of the Debtors' discharge based solely upon the Debtors' past failures to cooperate but, at the same time, avoided a possible loss at trial based on the defense that the Debtors' attorney's failures satisfactorily explained the Debtors' lack of cooperation.

The language of the Consent Order clearly provided the Debtors with a classic "either/or" scenario: either the Debtors provided the requested information within 30 days or their discharge would be revoked without further notice.  The Consent Order did not require the UST to prove that the Debtors had refused to provide the documents if they were not provided within the 30-day extension, nor did it give the Debtors an opportunity to avoid the

results of their agreement based on any mitigating factors that might arise during that same time period.  In fact, at the hearing on the Debtors' Motion to Vacate, this Court declined to hear evidence about why the Debtors had not produced all of the required documents during the 30-day extension period.  This Court specifically held that, based on the Consent Order, the reasons for the Debtors' non-compliance were irrelevant.  This Court cannot now find that the Debtors' non-compliance was based on an actual refusal to comply when the Court never heard any evidence to support such a conclusion.  The Debtors' discharge was revoked pursuant to §727(d)(4)(B) only.  It was not revoked under §727(d)(3) and, therefore, the revocation cannot under any circumstances be considered the equivalent of a denial of discharge under §727(a)(6).

This is not to say that the failure of a debtor to cooperate with a statutorily-mandated audit can never result in a discharge denial or revocation which impacts a debtor's future ability to discharge debts.  When the audit provisions were added to the Bankruptcy Code in 2005, the list of debtors' duties was amended to add a requirement that a debtor must cooperate and provide information when a case is selected for audit.  *See* 11 U.S.C. §521(a)(3), (4).  Had the UST sought and obtained an order in the 2008 case compelling the Debtors to fulfill their statutory duties and to cooperate and provide the information required for the

-12-

audit, and had the Debtors actually refused to obey that order, the UST might have had a basis to seek relief under §727(a)(6) or §727(d)(3). However, that did not occur. Instead, the UST's Complaint was filed pursuant to §727(d)(4)(B), and the UST was entitled to the relief it sought - revocation of the Debtors' discharge - absent a satisfactory explanation by the Debtors for their failure to cooperate with the audit. As set forth above, rather than mount a defense, Debtors elected to agree to the terms and conditions set forth in the Consent Order. When they failed to comply with its terms and conditions, the Debtors' discharge was revoked pursuant to the statutory provision upon which the Complaint was based - §727(d)(4)(B). The Debtors' discharge was not revoked for a reason which could have formed a basis for denial of the discharge in the first place, and, therefore, the revocation was not the equivalent of a denial of discharge. Further, even if the revocation could be considered the equivalent of a denial, the denial was not based on any of the subsections of §727(a) set forth in §523(a)(10) and, therefore, §523(a)(10) cannot be a bar to the Debtors' ability to discharge debts in this case.

For the reasons set forth above, the Motion for Order Lifting Automatic Stay filed by Illinois National Bank will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###